UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) Docket No.: 20-cr-10316-RGS |
| | ) |
| | ) |
| DORIAN ROJAS | ) |

### DEFENDANT'S SENTENCING MEMORANDUM[1]

Now comes Mr. Dorian Rojas, through his counsel, and respectfully recommends a sentence of 120 months of imprisonment, followed by 5 years of supervised release, no fine, and a $200 special assessment.

This sentence, jointly recommended by the parties, is the minimum mandatory sentence required by statute. It exceeds the low end of the applicable United States Sentencing Guideline for this case as calculated by the U.S. Probation Office (108-135 months), and it exceeds the applicable guideline entirely as calculated by the defendant (87-108 months).

This sentence is sufficient – indeed it is substantially greater than necessary – to accomplish the goals of sentencing set forth in 18 U.S.C. 3553(a)(2).

**The Sentencing Guidelines**:

The pre-sentencing investigation report's calculations place Mr. Rojas within Criminal History Category I, with a Total Offense Level of 31. The corresponding advisory guideline range is 108-135 months.

a. **Areas of agreement with the Pre-Sentencing Report's Guideline Calculation**

---

[1] With this memorandum, Mr. Rojas also submits Exhibit A: Letters of Support (11 pages) and Exhibit B: Letter of Jason Freedman, M.D.

1

Mr. Rojas agrees with the U.S.P.O.'s calculation of the sentencing guidelines in the pre-sentence report to the extent that:

i. His criminal history category is 1, having zero criminal history points. PSR ¶¶ 48-49.

ii. His base offense level is driven by the combined drug weight and places him at level 32, representing at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight.[2] USSG §2D1.1; PSR ¶35.

iii. He is entitled to a 3-level reduction for his timely acceptance or responsibility. USSG §3E1.1(a) and (b); PSR ¶¶ 42-43.

**b. Area of disagreement with the Pre-Sentencing Report Guideline Calculation: The Enhancement for Mr. Rojas's Role in the Offense Should Not Apply:**

Based on these areas of agreement, Mr. Rojas argues that the appropriate advisory sentencing guideline range is 87-108 months, representing a Total Offense Level of 29, rather than 31. This is a range that exceeds the 120-month statutory mandatory minimum.

Mr. Rojas objects to a 2-level increase applied for his role in the offense as an organizer, leader, manager, or supervisor. PSR ¶38. Mr. Rojas himself was acting at the direction of a third party. PSR ¶17, 22, 24, 26. He did not control the flow of packages and he had no knowledge of the larger operation. Mr. Rojas was not the "organizer, leader, manager, or supervisor" of Mr. Carrasco. Once Mr. Rojas asked if Mr. Carrasco wished to participate in package interdiction, Mr. Carrasco was a willing and keen co-participant, and was no less so for his reliance on Mr. Rojas for the introduction and the information to do so. Mr. Carrasco's reliance on Mr. Rojas for certain information was a mutually agreed dynamic which afforded Mr. Carrasco the benefit of limiting his own risk while expending minimal effort to profit from their mutual endeavor.

**The History and Characteristics of Dorian Rojas:**

---

[2] The total converted drug weight in this case is calculated to be 3,690.14 kilograms. PSR ¶35.

Mr. Rojas would be the first to agree that he should not be where he is today - facing sentencing for a drug conviction in federal court. He should be wrapping up a long and storied career in major league baseball, celebrating his success alongside several of his childhood friends who went on to play for the majors. Mr. Rojas was born in Santo Domingo, Dominican Republic. As a kid, he loved all sports, but baseball was his first love and his true calling. In his neighborhood, he started by playing stick ball with the other kids. He spent every free moment playing ball. When he started playing, he was younger than most of the other kids in the neighborhood. Because of his age, he was typically one of the smallest kids, but his "big brother" and best friend Albert Pujols took him under his wing and made sure he always chose Dorian to play on his team. That gesture of support and mentorship began a lifelong friendship between the two men that guided Mr. Rojas's baseball career and still exists today.

After his family moved to the United States, Mr. Rojas began school and was soon on his way to a career in professional baseball. He was mentored along the way by uncles and coaches, who recognized his natural talent and encouraged him, trained with him, and helped him develop his gift. After graduating high school, he was awarded athletic scholarships, first at North Florida College in Madison, Florida and then at Cumberland University in Lebanon, Tennessee. After college he played professionally for the Macon Music, a minor league team in Georgia in 2007, and then signed a contract with the Joliet Jackhammers in Illinois.

In Joliet, life threw him a proverbial curveball. During a game, Mr. Rojas threw a play from the outfield and knew immediately that something was very wrong. His shoulder was in excruciating pain. He was immediately taken out of the game. He had torn his labrum – the fibrocartilage attached to the rim of the shoulder that keeps the ball of the joint in place. It was clear that he was going to need surgery to repair his shoulder. It was nearing the end of the

season. Rather than stay in Illinois to watch the season wrap up from the injured list, Mr. Rojas asked his coach to trade him home closer to Boston, where he could be near his family and have his surgery and rehab there. His coach reluctantly agreed to release him if Mr. Rojas would promise to come back to play for the Jackhammers the following year after his surgery. With that plan in place, Mr. Rojas went back to Boston, had surgery, and signed a short-term contract to play for the Nashua Pride.

However, in the end, the combination of injury and economics ended Mr. Rojas's dreams of a professional baseball career.  After a seemingly successful surgery to repair his labrum, Mr. Rojas developed a rotator cuff injury, which his doctors suspected was a by-product of overuse to compensate for his injured labrum. The salary he earned in minor league baseball had been barely enough to pay his bills. Then his girlfriend Charlene learned she was pregnant. Going back to Joliet no longer made sense for Mr. Rojas and his family. He would not make enough money to support himself and a baby, and Charlene would not be able to accompany him there to have the baby in Illinois. A friend helped Mr. Rojas get a union job, so he told his coach in Joliet that he wouldn't be able to return to the Jackhammers.

Child support arrearages, school loans, rent, mounting credit card debt – none of these pressures can justify Mr. Rojas's choice to become involved with the drug trade. They merely provide the context. Mr. Rojas does not wish to minimize or explain away the wrongfulness of his decisions. He stands before this Court, having accepted responsibility for his actions, and is prepared to be sentenced.

**Mr. Rojas's Time While Released and Request to Self-Report:**

Mr. Rojas has used his time awaiting sentencing to spend time with his kids and prepare them for his absence.  He has also worked very hard (until his recent ankle injury), to bring his

child support payments out of arrearage and to provide his family with a small amount of money in his absence.

In July while visiting a water park with his kids, Mr. Rojas broke his right ankle, tibia and fibula. This injury was severe, and it has left him unable to ambulate without crutches as of the filing of this memorandum. He had surgery and is currently being followed by Jason Freedman, M.D. at the Cambridge Health Alliance Bone and Joint Center. Mr. Rojas remains in an air cast at this time and will remain so until his right ankle is healed enough to support his own weight. He will require an extended period of physical therapy to return to full functionality. *See Ex. B* – Letter of Jason Freedman, M.D.

The uniquely difficult circumstances of this injury, including the extensive physical therapy still necessary to ensure proper healing and future functionality, constitute exceptional circumstances for Mr. Rojas's request to remain at liberty pending a date in early January 2023 to self-report to the U.S. Marshals Office in Boston. This will give Mr. Rojas critical additional time to work with his treatment team at the CHA Bone and Joint Center. Mr. Rojas, no stranger to the importance of physical therapy and rehabilitation after injury, respectfully asks this Court to grant this request. Furthermore, his pre-trial release record is clear and convincing evidence that Mr. Rojas is "not likely to flee or pose a danger to any other person or the community." 18 U.S.C. §3143. His conduct while on pre-trial supervision in this case has been exemplary, to such an extent that he has been granted permission by this Court to travel outside of New England on five occasions during the pendency of this case, for purposes of employment and for personal travel for baseball tournaments and family events. *See* E.C.F. Nos. 22, 31, 60, 82, 85.

Mr. Rojas has honored the trust afforded him on these occasions, and understands his continuing obligations to this Court, if permitted to self-report.[3]

CONCLUSION

Mr. Rojas understands that a substantial prison sentence is warranted to reflect the serious nature of this offense, and the impact that the drug trade has on the community. He is prepared to face his sentence and deeply regrets the actions he took to place himself in this position. He joins the prosecution in recommending a sentence of 120 months in prison, followed by 5 years of supervised release - the mandatory minimum sentence required by statute.

Respectfully submitted,
DORIAN ROJAS
By his Attorney,

*/s/ Julie-Ann Olson*
Julie-Ann Olson
 B.B.O. # 661464
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
(617) 223-8061

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 4, 2022.

*/s/ Julie-Ann Olson*
Julie-Ann Olson

---

[3] There is support within this District for this request. See *U.S. v. Vimoon Sortsoy*, 1:21-cr-10031-ADB, allowing defendant to self-report four weeks after sentencing for 5-year mandatory minimum drug sentence, despite statutory presumption for immediate surrender, based on exceptional circumstances of Covid-19 exposure risk and defendant's excellent compliance with pretrial release conditions.